UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABDOULAYE BARRY,

                                            Petitioner,                ORDER

-vs-
                                                                                      25-CV-6803-MAV

JOSEPH FREDEN, *Deputy Field Office Director,*
*Buffalo Field Office, U.S. Immigration and Customs*
*Enforcement*; et al.,

                                            Respondents.
_____

## INTRODUCTION

Petitioner Abdoulaye Barry, a native of Guinea who entered the United States on or about February 24, 2024, was detained on December 5, 2025, and was transferred to the Buffalo Federal Detention Facility ("BFDF") in the custody of U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1 ¶¶ 17–24. He has filed this action pursuant to 28 U.S.C. § 2241, arguing that his continued detention without a bond hearing is a violation of the Immigration and Nationality Act ("INA") and associated regulations, as well as his due process rights under the Constitution. *Id.* ¶¶ 57–64.

For the reasons that follow, the petition is granted to the extent that the Court finds Petitioner is detained pursuant to 8 U.S.C. § 1226(a), and is therefore entitled to a bond hearing at the outset of detention as established by existing federal regulations. His argument to the contrary notwithstanding, the Court finds no Constitutional violation in Petitioner bearing the burden of proof at the initial bond hearing to demonstrate to the satisfaction of the Immigration Judge that he is not a

1

danger to the community or a flight risk.

## BACKGROUND

Petitioner Barry is a native of Guinea who entered the United States on or about February 24, 2024 near Lukeville, Arizona. ECF No. 1 ¶ 17. Upon entry, he presented himself for inspection at the Customs and Border Protection checkpoint, where he was detained overnight, issued a Notice to Appear placing him into removal proceedings, and then released on his own recognizance. *Id.* ¶¶ 18–20.

Petitioner was compliant with all immigration procedures while he was released, and his counsel is unaware of any criminal history. *Id.* ¶ 25, 27. On December 5, 2025, Petitioner was "abruptly" apprehended after he finished his shift at Walmart in Hamburg, New York, and taken to the BFDF, where he remains detained without bond. *Id.* ¶ 25.

Petitioner filed the instant petition on December 19, 2025 seeking relief for Respondents' alleged violation of the INA and the Due Process Clause of the United States Constitution. ECF No. 1. With respect to his claims under the INA, Petitioner maintains that his detention is governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)(2)(A) as Respondent maintains. *Id.* ¶ 58. This is significant, as § 1226(a) gives the Government discretion to release Petitioners on bond during their removal proceedings, whereas § 1225(b)(2)(A) provides for mandatory detention. *Id.* Among other things, Petitioner seeks an initial bond hearing under § 1226(a) at which the government bears the burden to demonstrate by clear and convincing evidence that he is a danger to the community. *Id.*

On December 23, 2025, the Court directed Respondents to show cause why Petitioner's petition should not be granted. ECF No. 2. Respondents filed their response on January 5, 2026, and Petitioner replied to that response the following day. ECF Nos. 3, 5.

## JURISDICTION

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's authority to detain aliens, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to the alien's detention or removal.[1] *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). No such discretionary judgments, actions, or decisions are at issue here. *See, e.g., Lieogo v. Freden*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2–5 (W.D.N.Y. Nov. 26, 2025) (rejecting the jurisdictional defenses raised by Respondents regarding a petition involving similar issues, and explaining why 8 U.S.C. §§ 1252(e)(3), 1252(g), and 1252(b)(9) did not bar the district court's review of the petition).

## DISCUSSION

Although they express disagreement with the Court's prior rulings concerning

---

[1] For instance, 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Additionally, judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

3

similar challenges to the government policy or practice at issue in this case, Respondents acknowledge that "the common question of law between this case and those rulings, would control the result in this case should the Court adhere to its legal reasoning in those prior decisions." ECF No. 4 at 1. Specifically, Respondents cite this Court's decision in *Da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025), and concede that the Court's resolution of the question in *Da Cunha* controls the result in the instant case. ECF No. 4 at 3. In that regard, Respondents state that "[s]hould the Court decide that [Petitioner] is subject to detention under 8 U.S.C. § 1226, the appropriate remedy is to order a bond hearing with the burden of proof on [Petitioner] . . . ." *Id.* at 2.

In reply, Petitioner notes that Respondents concede that the principles of *Da Cunha* direct a finding that his detention is governed by 8 U.S.C. § 1226(a), and that he is entitled to a bond hearing. ECF No. 5 at 1. However, Petitioner maintains that Respondents' attempt to assign the burden of proof to Petitioner is "misplaced," and that even if the Second Circuit's decision in *Velasco-Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) places the burden on the detainee at an "ordinary" bond hearing, that rule does not govern here. *Id.* Petitioner argues instead that:

> Where, as here, Respondents re-detain a noncitizen who lived freely in the community, complied with all immigration obligations, and was seized pursuant to a categorical interior-enforcement policy without any individualized finding of flight risk or danger, detention no longer resembles the discretionary custody contemplated in *Velasco Lopez*. Instead, it functions as de facto mandatory detention, triggering heightened due process protections applicable where liberty is at stake. Under these circumstances, the presumption favors liberty, and due process requires Respondents to bear the burden of justifying continued detention.

4

*Id.* at 2.

Thus, to resolve the instant petition, the Court must first determine which statute governs Petitioner's detention, and – if it finds detention is governed by § 1226(a) – determine the appropriate burden of proof at the initial bond hearing.

## I. The Statute Governing Petitioner's Detention

In *Mahmodi et al.* v. *Marich, et al.*, No. 25-CV-6762-MAV, 2026 WL 113473 (W.D.N.Y. Jan. 15, 2026), this Court summarized its holding in *Da Cunha*, and stated that "[g]iven Respondents' concession that the principles of *Da Cunha* control in the instant case, the Court finds that Petitioners are detained under 8 U.S.C. § 1226(a)." *Mahmodi*, 2026 WL 113473 at *2–3 (citing *Da Cunha*, 2025 WL 3280575 at *4–6). Accordingly, the Court also found the petitioners were entitled to an initial bond hearing "at the outset of detention" as established by existing federal regulations. *Id.*

Similarly, the Court here finds that, given Respondents' concession that the principles of *Da Cunha* control in the instant case, Petitioner is detained under 8 U.S.C. § 1226(a). He has been living in the United States since 2024, working for at least part of that time at Walmart, and there is no suggestion in the parties' papers that he was arrested while actively "seeking admission." *See, e.g., Mahmodi*, 2026 WL 113473 at *2–3 (noting that the petitioners in that case had been living and working in the United States since 2024, and there was no suggestion in the papers that they were arrested while actively "seeking admission."). Therefore, Petitioner is entitled to a bond hearing "at the outset of detention" as established by existing federal regulations. *Da Cunha*, 2025 WL 3280575 at *7; 8 C.F.R. §§ 236.1(d)(1),

1236.1(d)(1).

## II. Burden at the Initial Bond Hearing

As indicated above, the parties disagree as to the appropriate burden at Petitioner's initial bond hearing. Respondents maintain that the Petitioner should bear the burden of proof to show to the satisfaction of the Immigration Judge that he is neither a flight risk or a danger to the community. ECF No. 4. In reply, Petitioner maintains that under the circumstances of his case, "the presumption favors liberty, and due process requires Respondents to bear the burden of justifying continued detention." ECF No. 5 at 2.

The Court discussed the Due Process Clause and the Second Circuit's decision in *Velasco Lopez* at great length in *Mahmodi*, and ultimately concluded that the allocation of the burden of proof at an alien's bond hearing requires the application of the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to the circumstances of each particular case.[2] *See Mahmodi,* 2026 WL 113473 at *3–9. The Court incorporates that analysis here, and applies the *Mathews* test to the circumstances alleged in the instant petition.

### *i. First Mathews Factor: The Private Interest Affected*

With respect to the first factor of the *Mathews* test, the private interest that will be affected, the Court finds that Petitioner's affected private interest is "the most significant liberty interest there is—the interest in being free from imprisonment."

---

[2] The Court was careful to note that "[n]othing in this conclusion . . . should be read to restrict an alien's opportunity to raise as-applied challenges to detention under 8 U.S.C. § 1226(a) within the limits of the Court's habeas jurisdiction." *Mahmodi,* 2026 WL 113473 at *7.

*Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Thus, this factor weighs in favor of Petitioner.

Nevertheless, "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor . . . ." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022). For one, the Supreme Court has expressed "a longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings . . . ." *Demore*, 538 U.S. at 526. Further, Petitioner here was detained at the Buffalo Federal Detention Facility for only two weeks at the time he filed his petition. *See Velasco Lopez*, 978 F.3d at 852 (citing *Demore*, 538 U.S. at 529) ("the longer the duration of incarceration, the greater the deprivation . . . . where the Supreme Court has upheld detention during the pendency of removal proceedings, it has been careful to emphasize the importance of the relatively short duration of detention."). Lastly, Petitioner's detention has a "definite termination point." That is, by statute, Petitioner may only be detained under § 1226(a) pending a decision on whether he is to be removed from the United States. *See, e.g., Demore*, 538 U.S. at 528 (finding it a significant due process consideration that detention under § 1226 has a "definite termination point").

While the Court does not minimize the importance and fundamental nature of the individual's right to liberty, the Court finds that due to the shorter length of his detention at the date of filing of his petition, and the absence of any allegations regarding the conditions of confinement, the first factor weighs in Petitioner's favor to a lesser extent than in the petitioner's in *Velasco Lopez*.

*ii. Second Mathews Factor: Risk of Erroneous Deprivation*

With respect to the second factor of the *Mathews* test, the risk of erroneous deprivation, the Court finds this factor to be neutral at this stage of the proceedings.

The Second Circuit found in *Velasco Lopez* that "the procedures underpinning [the petitioner]'s lengthy incarceration markedly increased the risk of error." *Velasco Lopez*, 978 F.3d at 852. In the instant case, however, Petitioner has not made a showing of any pertinent similarities of his circumstances with that of the petitioner in *Velasco Lopez*, and there is no evidence before the Court to suggest that the ample process outlined in the relevant regulations is intrinsically deficient. *See Mahmodi*, 2026 WL 113473, at *4–5 (summarizing the relevant regulations). To begin with, once Respondents comply with the instant order, Petitioner will have received an initial bond hearing within two months of his initial detention, a full two months earlier than the initial bond hearing in *Velasco Lopez. See also Rodriguez Diaz*, 53 F.4th at 1207 (finding the petitioner's reception of an initial bond hearing within two months after he was detained a relevant consideration "diminish[ing]" the weight given to the petitioner's liberty interest). Further, Petitioner does not have a criminal record that would implicate the alleged informational disadvantage caused by the "substantial resources" Respondents may utilize to discover information. ECF No. 1 ¶ 27; *see also, e.g., Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022) (finding the second factor tips in the Government's favor, in part, because aliens should know much more about their history, family, and employment than the Government, and because they have the opportunity to retain counsel to represent them before the

8

Immigration Judge).

Thus, Petitioner, who may be represented by counsel at his initial bond hearing, has not demonstrated that he will be unable to obtain any required information or otherwise be at an informational disadvantage to Respondents at this point in the proceedings.

### iii. Third Mathews Factor: The Government's Interest in Detention

As to the third and final factor of the *Mathews* test, the government's interest in detaining Petitioner, "the Attorney General's discretion to detain individuals under 8 [ ] U.S.C. [§] 1226(a) is valid where it advances a legitimate governmental purpose . . . [such as] . . . ensuring the appearance of aliens at future immigration proceedings . . . ." *Velasco Lopez*, 978 F.3d at 854. "The importance of these interests is well-established and not disputed." *Id.*

In *Velasco Lopez,* the Second Circuit stated that "[w]hile the Government's interest may have initially outweighed short-term deprivation of [the petitioner]'s liberty interests, that balance shifted once his imprisonment became unduly prolonged." *Id.* at 855. Nevertheless, it declined "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden." *Id.* at 855 n. 13. The Court does not read the Second Circuit's conclusion in this regard to suggest that the third *Mathews* factor must always weigh in favor of the petitioner. Rather, the Court reads *Velasco Lopez* "to suggest that the inverse [of the *Velasco Lopez* petitioner's case] is also true: namely, that it may not be a violation of due process for an alien to bear the burden of proof

9

at a hearing that takes place shortly after their initial detention . . . and where a petition is filed after a relatively brief period." *Raspoutny v. Decker*, 708 F. Supp. 3d 371, 383 (S.D.N.Y. 2023) (quoting *Huanga*, 599 F. Supp. 3d at 139).

That is precisely the case here. The petition was filed 14 days after Petitioner's arrest, and his initial bond hearing, following Respondents' compliance with this order, will occur within two months of Petitioner's detention. Consequently, the Court finds that the third factor weighs in favor of the Respondents.

Having weighed all three factors, determining that the first weighs slightly in favor of Petitioner, the second is neutral, and the third weighs in favor of Respondents, the Court finds that Petitioner has failed to demonstrate that the Due Process Clause requires Respondents to bear the burden at the initial bond hearing to show by clear and convincing evidence that Petitioner is a danger to the community or a flight risk. He has further failed to demonstrate that it is a due process violation to place the burden on him at the initial bond hearing "'to show to the satisfaction of the Immigration Judge that he'" is neither a flight risk nor a danger to the community and therefore merits release on bond. *See Mahmodi*, 2026 WL 113473, at *5 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

## CONCLUSION

Accordingly, Petitioner's application for habeas relief [ECF No. 1] is GRANTED to the extent that the Court finds that he is detained under 8 U.S.C. § 1226(a), and therefore that Petitioner is entitled to an initial bond hearing under the relevant regulations. ECF No. 24. It is hereby,

ORDERED that Respondents shall hold an individualized bond hearing for Petitioner within ten (10) days of the date of this Order; and it is further

ORDERED that if Respondents fail to hold a bond hearing for Petitioner within ten (10) days, Petitioner shall be released from custody; and it is further

ORDERED that Respondents shall file a status report no later than seventeen (17) days from the date of this order confirming that Petitioner has either been granted a bond hearing within ten (10) days or released from custody in compliance with this Order; and it is further

ORDERED that, because the instant Order resolves this action, an evidentiary hearing is not warranted and the restriction on Petitioner's transfer outside of the United States is lifted.

The Clerk of Court is directed to enter judgment in favor of Petitioners and close this case.

SO ORDERED.

Dated:   January 28, 2026
         Rochester, New York

ENTER:

*/s/ Meredith Vacca*
HON. MEREDITH A. VACCA
United States District Judge